UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Gary La Barbera, Lawrence Kudla, Thomas
Gesualdi, Paul Gattus, Theodore King,
Chester Broman, Frank Finkel and Joseph
Ferrara as Trustees and Fiduciaries of
the Local 282 Welfare, Pension, Annuity,
Job Training, and Vacation and Sick
Leave Trust Funds,

                         Plaintiffs,          CV-03-1762 (CPS)

      - against -              MEMORANDUM
                                   OPINION AND ORDER
Dasgowd, Inc., Irondequoit Corp., Norelli
& Oliver Construction Co. Inc., Satisfied
Trucking, and Vidago Construction Corp.,

                    Defendants.

----------------------------------------X
SIFTON, Senior Judge.

      Plaintiffs, the Trustees and Fiduciaries of the Local 282
Welfare, Pension, Annuity, Job Training and Vacation and Sick
Leave Trust Funds (the "Funds") brought this action against
Dasgowd Inc., Irondequoit Corp., Norelli & Oliver Construction
Co., Inc., Vidago Construction Corp., and Satisfied Trucking to
recover payments for unpaid pension contributions pursuant to the
provisions of the Employee Retirement Income Security Act of 1974
("ERISA"), as amended, 29 U.S.C. §1001 et. seq.[1] Plaintiffs
sought to enforce the terms of a Trust Agreement entered into
between plaintiffs and each defendant pursuant to §502(A)(3) of
ERISA, 29 U.S.C. §1132(a)(3) and Sections 209(a) and 515 of

_____

[1] The action against defendant Dasgowd, Inc. was dismissed without
prejudice on September 12, 2003.

ERISA, 29 U.S.C. §§1059(a) and 1145, and collect payments alleged
to be owed to the Funds under the terms of various collective
bargaining agreements between defendants and the Teamsters Local
282 of the International Brotherhood of Teamsters.

After defendants Irondequoit, Norelli and Vidago failed to
appear or otherwise defend in this action, the Clerk of the Court
noted their default. Default was entered against Satisfied on
August 25, 2004. Consolidating the motion for default judgment
against defendants Irondequoit, Norelli and Vidago with the
motion filed against Satisfied, I referred the matter to
Magistrate Judge Go for determination of the amount of damages,
including liquidated damages, interest and attorneys' fees. On
November 30, 2005 Magistrate Go issued a Report and
Recommendation (the "Report") in which she awarded the plaintiffs
damages in the amount of the unpaid contributions plus 6 percent
interest and attorneys fees. Now before this Court is plaintiffs'
objection to that portion of the Report which concluded that the
correct rate of interest was 6 percent. For the reasons set forth
below, the Magistrate Judge's determination of the applicable
interest rate is reversed, and the remainder of the Report is
adopted.

BACKGROUND

The following facts are drawn from the complaint and the
other submissions of the plaintiff in connection with this

motion.  I recite only those facts necessary to decide the
present motion.

The Funds are employee benefit plans within the meaning of
§3(3) of ERISA, 29 U.S.C. §10002(3), which provides various
pension, health and welfare, annuity, job training, vacation and
sick leave, and legal services benefits to covered employees,
retirees and their dependents.  The Funds are operated pursuant
to the terms of the Agreement and Declaration of Trust ("Trust
Agreement"). Each of the defendants was required to pay to the
Funds contributions due and owing under the Trust Agreement, but
each defendant failed to do so. As noted, the Magistrate Judge
determined that the defendants were liable for damages in the
amount of their unpaid contributions plus 6 percent interest and
attorneys' fees.

## DISCUSSION

A district court reviewing a magistrate judge's report
follows the standards established in 28 U.S.C. § 636(b)(1) and
Fed.R.Civ.P. 72(b). Those parts of the report to which timely
written objection has been made by any party are reviewed de
novo, but the uncontested portions of the report may be adopted
unless they show clear error. *See Thomas v. Arn,* 474 U.S. 140,
151-52, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Grassia v. Scully,*
892 F.2d 16, 19 (2d Cir.1989); *Tapia-Garcia v. United States,* 53
F.Supp.2d 370, 373 (S.D.N.Y.1999).

Plaintiffs object to the Report only to the extent that it calculated damages based upon a 6 percent interest rate. Plaintiffs claim that under the relevant statutory scheme the appropriate interest rate is 16 percent. The statutory scheme which provides for interest on unpaid contributions is as follows:

§502(g)(2)(B) of ERISA, 29 U.S.C. §1132(g)(2) provides that a fiduciary seeking to enforce provisions of an employee benefit plan is entitled to recover:

(A) the unpaid contributions

(B) interest on the unpaid contributions

(C) an amount equal to the greater of:

      (I) interest on the unpaid contributions

      (ii) liquidated damages provided for under the plan, not to exceed 20% of the unpaid contribution.

D) reasonable attorney's fees

29 U.S.C. §1132(g)(2)(b) specifies that the amount of interest on unpaid contributions is "determined by the rate provided under the plan, or, if none, the rate prescribed under Section 6621 of Title 26."

The plan at issue here did provide an interest rate. The Trust Agreement specified in relevant part that:

[a]n employer who is in default on required Fund contributions for more than five working days shall be obligated to pay interest at the rate specified in Section 5-501 of the General Obligations Law of the

> State of New York, as the same may be amended from time
> to time . . .

The referenced section of New York's General Obligations Law

("GOL"), §5-501(1) provides that:

> The rate of interest, as computed pursuant to this
> title . . . shall be six per centum per annum unless a
> different rate is prescribed in section fourteen-a of
> the banking law.

New York Banking Law §14-a provides that

> [t]he maximum rate of interest provided for in section
> 5-501 of the general obligations law shall be sixteen
> per centum per annum."

The issue is thus whether §14-a's 16 percent interest rate is

meant to be the prescribed rate discussed in GOL 5-501, or

whether §16-a sets only a maximum rate without prescribing any

rate for general use, such that the 6 percent default rate of §5-

501 applies.

The statutory text alone does not provide a clear answer as

to which rate applies. §5-501(1) of the GOL states that the six

percent rate governs "unless a different rate is *prescribed*" in

§14-a of the Banking Law. (emphasis added). §14-a, in turn,

states that "[t]he maximum rate of interest provided for in

section 5-501 . . . shall be sixteen per centum per annum," but

does not explicitly state that this is the "prescribed" rate. One

interpretation of this scheme views §5-501 as prescribing the

"legal"[2] rate and §14-a as "prescribing" the maximum rate. *See*

---

[2] In other words, the rate actually to be applied.

*e.g., King v. JCS Enters.*, 288 F.Supp.2d 287, 289 (E.D.N.Y. 2003). However, a second interpretation views §14-a(1) as "simply describing the nature of the rate it is prescribing-the 'maximum rate of interest provided for in section 5-501'-and then setting this rate at 'sixteen percent per annum.'" *La Barbera v. AFC Enters. Inc.,* 2005 WL 3112393, *5 (S.D.N.Y. 2005)(quoting N.Y. Banking Law § 14-a(1)). According to this reasoning, if §5-501 fails to prescribe any rate of interest, then the rate of interest is six percent. However, if the section prescribes any rate then that is the rate that applies unless the plan provides for a rate lower than the maximum prescribed rate.

The purpose of §5-501(1) suggests that this latter interpretation is correct. That section is part of a larger statutory scheme in Title 5 of the GOL that prohibits usury; its function is to set the maximum legal interest rate that may be charged on various contracts. *See generally* N.Y. Gen. Oblig. Law §§ 5-501-5-531. For example, §5-501(2) provides that "[n]o person or corporation shall . . . charge, take or receive any money, goods or things in action as interest . . . at a rate *exceeding the rate above prescribed* [in § 5-501(1) ]." *See also id.* § 5-511 (declaring contracts void if they set a rate higher "than is prescribed in section 5-501"); *id.* § 5-513 (creating right of action for individuals who are charged an amount higher than "is allowed to be received pursuant to section 5-501"). Title V's

provisions do not distinguish between a "legal" rate and a "maximum" rate - they simply prohibit contracts or other obligations whose interest rate is higher than the single rate "prescribed in section 5-501." That rate is undisputably the 16 percent maximum set forth in §14-a(1). *See* N.Y. Comp. Codes R. & Regs. tit. 3, § 4.1 (2005) ("For the purpose of General Obligations Law section[ ] 5-501 . . . the maximum rate of interest to be charged, taken or received . . . is . . . 16.00% per annum."); *Seidel v. 18 East 17th Street Owners, Inc.,* 79 N.Y.2d 735, 740, 586 N.Y.S.2d 240, 242, 598 N.E.2d 7 (1992) (applicable rate under §5-501(2) of the G.B.L. is 16 percent rate set in Banking Law § 14-a(1)); *Tower Funding, Ltd. v. David Berry Realty, Inc.,* 302 A.D.2d 513, 514, 755 N.Y.S.2d 413, 415 (2d Dep't 2003) (citing GOL § 5-501(1) and Banking Law § 14-a(1) for the proposition that "[a] loan is usurious if its interest rate exceeds 16% per annum").

The history of §§ 5-501 and 14-a also suggests that §5-501 designates a single rate and that that rate is 16 percent. As the Second Circuit explained in *Trans World Airlines v. Hughes*, 449 F.3d 51, 80-81 (2d Cir. 1971), prior to 1968 GOL §5-501 set the legal rate of interest at 6 percent. In 1968 §14-a was enacted to give the Banking Board (the "Board") discretion to set the interest rate. *Id.* §5-501 continued to provide a default rate of 6 percent that applied only "if no rate has been . . . prescribed

by Section 14-a." 1968 N.Y. Sess. Laws. 598 (McKinney).  The
Board always exercised its discretion and prescribed a maximum
rate that supplanted the GOL's 6 percent rate.  *See* N.Y. Comp.
Codes R. & Regs. tit. 3, § 4.1;  *La Barbera v. AFC Enterprises
Inc.,* 2005 WL 3112393, *5 (S.D.N.Y. 2005). State and federal
courts considering which interest rate should apply, the maximum
rate set by the banking board, or the default rate specified in
§5-501 repeatedly found that whatever maximum rate had been set
by the Board *was* the rate specified in §5-501 of the GOL. No
"legal" rate existed separate from the "maximum" rate. *See, e.g.,
Rachlin & Co. v. Tra-Mar, Inc.,* 33 A.D.2d 370, 373-75, 308
N.Y.S.2d 153, 157-59 (1st Dep't 1970); *Trans World Airlines v.
Hughes,* 449 F.2d 51, 80-81 (2d Cir.1971); *Jamaica Sav. Bank v.
Giacomantonio,* 59 Misc.2d 704, 300 N.Y.S.2d 218, 219-22 (Sup.Ct.
Queens County 1969); *Gelco Builders v. Simpson Factors Corp.,* 60
Misc.2d 492, 301 N.Y.S.2d 728, 732-33 (Sup.Ct. N.Y. County 1969);
*Rock Trans. Props. v. Hartford Fire Ins. Co.,* 312 F.Supp. 341,
348-49 (S.D.N.Y.1970); *Kaufman v. Chase Manhattan Bank,* 370
F.Supp. 279, 280-81 (S.D.N.Y. 1974).

In 1978, the 1968 version of §14-a was repealed and replaced
with a substantially similar provision that transferred authority
for setting the "rate of interest provided in section 5-501" to
the Superintendent of Banks. *See* 1979 N.Y. Sess. Laws 81
(McKinney). Thereafter the statutes continued to interact in the

same way: §14-a still prescribed a maximum interest rate that always superseded the six percent default rate in §5-501 and constituted the sole rate "specified" in §5-501. *See id.; AFC Enterprises*, 2005 WL 3112393 at *6.

In 1980, the 1978 version of Banking Law §14-a was repealed and replaced with the current version. This new version no longer vested the discretion to set the interest rate with a third party, but instead specified that "[t]he maximum rate of interest provided for in section 5-501 of the general obligations law shall be sixteen per centum per annum." *See* 1981 Sess. Laws 33-34 (McKinney).

As the *AFC Enterprises* court explained, "[t]he way to read the amended statutes in light of their history is that the amendments once again altered the mechanism by which the maximum rate is established, but did not change the basic relationship between the two laws. That is, the Banking Law still supersedes the G.O.L.'s six percent default rate and supplies the rate 'specified' by Section 5-501. The only difference is that this "maximum" or "legal" rate is now fixed by Section 14-a(1) rather than by the banking board or the banking superintendent." *AFC Enterprises*, 2005 WL 3112393 at *6.

This reading is reinforced by subdivision 5 of §14-a(5) of the Banking Law, which provides that

> Whenever reference is made in this chapter or in any
> other law, contract or document to the rate of interest

prescribed or to be prescribed by the banking board or
the superintendent pursuant to this section or any
former section 14-a of this chapter, such reference
shall be deemed a reference to the rate of interest
prescribed in subdivision one of this section.

N.Y. Banking Law §14-a(5). This provision makes clear "that the
16 percent rate set forth in §14-a(1) is intended to succeed the
rate that had previously been set by the banking board or banking
superintendent and represents the rate "prescribed" by Section
14-a." *AFC Enterprises*, 2005 WL 3112393 at *6. Accordingly,
because §14-a has "prescribed" a "different rate," §5-501(1)
instructs that the six percent default rate does not apply.

The majority of courts to consider this issue agree with the
reasoning set forth above and have held that the legal rate of
interest set forth in GOL §5-501 is the "maximum rate of
interest" stated in §14-a of the Banking Law. *See, e.g., AFC
Enterprises Inc.,* 2005 WL 3112393, *5 (S.D.N.Y. Nov. 21, 2005);
Report and Recommendation, *La Barbera v. Bulldog Constr., Ltd.,*
No. 98 Civ. 7286(JS)(MLO), at 6 (E.D.N.Y. July 28, 2005), adopted
by Judge Seybert (Aug. 12, 2005) (unpublished order); *La Barbera
v. Eagle Scaffolding Co.,* No. 02 Civ. 7288(LBS)(DFE), at 4-8
(S.D.N.Y. March 21, 2005), adopted by Judge Sand (Apr. 18, 2005)
(unpublished endorsement); Report and Recommendation, *La Barbera
v. Bevel Props., Inc.,* No. 02 Civ. 6673(ARR)(VVP), at 4 (E.D.N.Y.
Mar. 11, 2005), adopted by Judge Ross (Mar. 30, 2005)
(unpublished opinion and order); Report and Recommendation,

*Bourgal v. Robco Contracting Enters., Ltd.,* No. 93 Civ.
2664(ADS)(VVP), at 8 (E.D.N.Y. Aug. 8, 1997), adopted by Judge
Spatt (Sept. 24, 1997) (unpublished order).

However, a few courts have reached the opposite conclusion
and have held that because the 16 percent rate is not
"prescribed", the 6 percent rate applies. For example, in *King v.
JCS Enterprises*, 288 F.Supp.2d 287, (E.D.N.Y. 2003),[3] the court
stated that there was only one possible reading of §5-501 under
which the Banking Law "simply set a maximum interest rate
understanding that the legal rate would thereby be set by the
General Obligations Law." *Id.* at 290. The Court asserted that any
other reading would render the GOL's six percent interest rate
"meaningless" because the Banking Law would always supersede the
GOL. However, for the reasons set forth above, namely that the
statutes are open to more than one interpretation and that their
history, purpose and context suggest that the "maximum" interest
rate is the "legal" interest rate, I respectfully disagree with
the *King* court's reasoning. The 6 percent GOL rate is not
meaningless because it is a default rate that would apply if the
Banking Law were altered to include no rate. Accordingly, the
Magistrate's conclusion, relying solely on the *King* decision,

---

[3] Two other courts have adopted the *King* reasoning. *See LaBarbera v.
ADCO Serv. Corp.,* No. 02 Civ. 5289(SJ), 2005 WL 755758, at *2 (E.D.N.Y. Mar.
29, 2005); Findings of Fact and Conclusions of Law, *La Barbera v. A. Morrison
Trucking, Inc.,* No. 00 Civ. 7218(RLM), at 34-36 (E.D.N.Y. Mar. 8, 2004).

that the 6 percent interest rate applied is reversed.

The Plaintiffs do not offer any additional objections to any other portions of Magistrate Judge Go's Report. I may adopt these uncontested portions unless they show clear error. *See Thomas v. Arn,* 474 U.S. 140 at 152,; *Tapia-Garcia,* 53 F.Supp.2d at 373. I have reviewed these uncontested portions and agree with their recommendations. I therefore adopt them.

CONCLUSION

For the reasons set forth below the Report and Recommendation of Magistrate Go is adopted in part and reversed in part. Plaintiffs shall settle a judgment on notice on or before March 9, 2006.

The Clerk is directed to furnish a copy of the within to the parties and to the Magistrate Judge.

SO ORDERED.

Dated :   Brooklyn, New York

February 13, 2006

By: /s/ Charles P. Sifton (electronically signed)
    United States District Judge